SANTIAGO MARCANO RODRÍGUEZ and ÁNGEL MARCANO, Plaintiffs and Appellants, v. PEPSI COLA BOTTLING CO., Defendant and Appellee.

No. R-65-168.     Decided November 22, 1967.

*Raimundo Suárez Lazú* for appellants. *Fiddler, González & Rodríguez* and *Manuel Hernández Penzol* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The issue for determination is (1) whether Santiago Marcano Rodríguez was an executive of appellee so that if he had worked extra hours there is no obligation to pay them to him and (2) whether Ángel Marcano, as a matter of fact, worked extra hours which were not paid to him. We agree with the trial court in its finding that the former was such an executive and that the latter did not work the extra hours claimed.

I. Let us examine first the case of Santiago Marcano

Rodríguez. He claims the payment corresponding to 6,192 extra hours worked as maintenance mechanic of appellee's bottling plant during 258 weeks, from March 28, 1953, to February 15, 1963.

The evidence showed that Marcano Rodríguez:

(a) received a salary of $100 a week;

(b) he was employed on March 11, 1958, as Production Chief and "As an executive . . . you shall work the necessary hours to attain and maintain the good management and operation of your department";

(c) it was his duty to see that the machinery worked efficiently and he carried out directly some of the repairs necessary to keep the equipment in a good state of production;

(d) he was authorized to sign purchase orders of materials necessary to perform the repairs up to a maximum of $25; he also purchased brushes and material to wash the bottles without consulting the management provided the order did not exceed $25. Said limit was altered in the following manner: "[e]very purchase order involving a disbursement of more than $100 shall be approved by Mr. Julio César Pérez, Comptroller. Every purchase order exceeding $500 shall be approved by Mr. Mock, President, and Mr. Pérez, Comptroller";

(e) he made daily reports on the production of his department and supervised the work rendered by the personnel working there;

(f) he was always in charge of and had under his supervision not less than 16 workers,[1] being responsible for their

---

[1] At p. 9 of the judgment—Conclusions of Law—first paragraph, third sentence, it is said:

". . . It having been likewise concluded that the plaintiff's primary duty consisted in the direction of a recognized department or subdivision of the enterprise and that he customarily and regularly directed the work of not less than 6 employees, we are confronted therefore with the

discipline and having the duty to see that the work was performed in an efficient manner;

(g) it was his duty to see that the product was of an adequate quality;

(h) he was authorized to control workers and recommended the necessary disciplinary measures including lay-offs;

(i) when there was any breakage in the machinery and in his opinion it was necessary to hire a mechanic or electrician to perform the work, he so recommended and his advice and opinion were followed by the management;

(j) he was authorized to allow workers to work extra hours if in his opinion it was necessary to maintain the production of the plant;

(k) he attended meetings of the Management and gave his opinions as to the measures to be taken to improve the operation and efficiency of the plant (recommending the purchase of equipment).

The evidence also showed that the Production Department was a customary recognized department or subdivision of appellee.

Act No. 379 of May 15, 1948 (29 L.P.R.A. §§ 271 to 288), is the one which in part provides for the rights claimed herein. Said act excludes in its § 19 (29 L.P.R.A. §, 288) executives, managers, and professionals, among others, from the definition of "Employee" for which reason they are not covered by the provisions concerning regular and extra hours of work. *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 P.R.R. 86 (1961).

---

fact that the plaintiff in the case of Santiago Marcano met the requirements set forth in the applicable Regulations."

At p. 5 of appellee's brief it is indicated that:

"When the plant was removed to Villa Prades Industrial Development in May 1959, a bigger number of new and modern machines was installed, the working day in the enterprise was reduced to one shift only composed of about 18 to 20 employees, all under the direct supervision of Santiago Marcano, as Production Chief." See T.E. p. 316.

The Secretary of Labor, under the authority of the powers vested in him under § 17 of the aforementioned Act (29 L.P.R.A. § 286), promulgated a set of Rules which became effective January 15, 1952. A definition of the term "executive" for the purposes of the exclusion established by the aforementioned § 19 was adopted therein.[2] The same is

---

[2] The Regulations provide that:

"For the purposes of art. 19 of Act No. 379 of May 15, 1948 [29 L.P.R.A. § 288] and of sec. 5 of Act No. 289 of April 9, 1946, as amended by Act No. 130 of April 27, 1950 [29 L.P.R.A. § 299], the term 'executive' means:

(1) In commercial or manufacturing activities.

(A) Any employee who meets the following requirements:

(i) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof;

(ii) who customarily and regularly directs the work of two or more other employees therein or of such department or subdivision thereof;

(iii) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given special attention;

(iv) who customarily and regularly exercises discretionary powers;

(v) who does not devote over 20 percent of the number of hours worked in the workweek to activities not directly or intimately related to the performance of the work described in par. (A), subpars. (i) to (iv) of this subdivision; Provided, That this subpar. (v) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20 percent interest of the enterprise he works for; and

(vi) who is compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to the weekly salary which results from multiplying by 60 the highest minimum rate per hour applicable by a law of the Commonwealth of Puerto Rico or by a mandatory decree of the Minimum Wage Board of Puerto Rico to the activities in connection with which he performs his duties as an executive, exclusive of board, lodging, or other facilities; Provided, however, That the weekly salary shall never be less than 35 dollars when said compensation computed in the manner already mentioned would result in or is less than this amount, or when there is no salary applicable by law or decree; or

(B) (i) Any employee whose work complies with the require-

a revision of the former and principally modified the latter in the sense expressed in Piñán v. Mayagüez Sugar Co., Inc., supra, footnote 3, and Morales v. Superior Court, 84 P.R.R. 119, 121, footnote 1 (1961).[3] As it may have been noted the aforesaid Regulations have two paragraphs with different requirements each one for the employee to be considered an executive. The second paragraph, that is, paragraph (B), refers to any employee whose work complies with the requirements provided in paragraph (A) (i) and (ii) of said Regulations and who is compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to a weekly salary of not less than $100; exclusive of board, lodging, or other facilities. See Sierra v. Rosso, Per Curiam decision of June 4, 1963.

Appellant Santiago Marcano Rodríguez always received a weekly salary of not less than $100. Therefore, for the purposes of determining whether or not he was an executive, as defined by said Regulations, we must determine, and it suffices, whether the requirements of paragraph (B) are met. Sierra v. Rosso, supra.[4]

ments of par. (A)(i) and (ii) of this subdiv. (1); and

(ii) who is compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to a weekly salary of not less than 100 dollars, exclusive of board, lodging, or other facilities."

[3] In Morales v. Superior Court, supra, we indicated that:

"For the period of time prior to January 15, 1952, covered by the complaint, in the absence of an administrative statement on that score, we shall consider all the facts relevant to the nature and functions of the employment. . . . As we pointed out in Piñán v. Mayagüez Sugar Co., ante, p. 86, from the 15th of January 1952 the determination of whether or not the complainant was an executive depends on the concurrence of the requisites enumerated in the regulations approved by the Secretary of Labor and promulgated on December 26, 1951 to define said term for the purposes of the exclusion established by § 19 of Act No. 379 of May 15, 1948, . . . ."

See also, Medina v. Unión Obreros Cervecería Corona, 86 P.R.R. 609 (1962).

[4] It should be noted that the trial court in the conclusions of law of its judgment, p. 9, footnote 3 indicated that:

Another of the requirements is that customarily and regularly he must direct the work of two or more employees of the enterprise or of a department or subdivision thereof. Claimant also meets this requirement as inferred from the record of the case since he always directed the work of more than two employees in defendant's production department.

The third requirement involved herein requires that the employee's primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof.

The local regulation to which we have referred is germane to the description made by the Federal Administrator of an employee who is employed in a bona fide executive capacity.[5] *Matos Velázquez* v. *Proctor Manufacturing Corp.*, 91 P.R.R. 44 (1964). See footnote 2.

Appellant alleges that:

---

"Plaintiff met also the other requirements enumerated in said Regulations. The analysis thereof is immaterial in the consideration of the case of *Santiago Marcano*, in view of the fact that plaintiff's salary was $100 weekly in said enterprise . . . ." (Italics in the original.)

[5] Section 541.103 of the Federal Regulations (29 C.F.R. § 541.103) provides that:

"A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor."

(1) in the trial court concluding that "it was his duty to see that the machinery worked efficiently and he carried out directly some of the repairs necessary to keep the equipment in a good state of production," it was established as a matter of fact that appellant's primary duty concerned the machinery itself and not the personnel. The evidence does not justify this finding. The efficient work of the machinery necessarily included appellant's other activities related to the personnel under his supervision and to the quantity and quality of the production. Although it appears that appellant performed repairs, it is evident that this activity could not require the major part of his time nor could it be his primary duty because it was new machinery, and it further appears from the record that he was authorized to use the services of mechanics and electricians in connection with the repairs of the machinery.

(2) that the authority to make purchases of materials up to $25 and to make daily reports are powers which may be vested in a mechanic or janitor. *Piñán* v. *Mayagüez Sugar Co., Inc., supra*. As we have indicated before, this authority was much more ample and it was only one of many other managerial duties of appellant. It is distinguished from the employee in *Piñán, supra*, in which the employee was a mere timekeeper with limited powers which as a whole did not justify the conclusion that the employee was an executive.

(3) that the conclusion of the trial court that appellant "attended meetings of the management and gave his opinions as to the measures to be taken to improve the operation and efficiency of the plant" coupled to the fact that appellant Santiago Marcano was sent by appellee to take a course or training to operate the new bottling machine, leaves no doubt that this appellant was essentially an expert mechanic, machine operator in charge of the operation of the plant. This argument is in essence the one adduced under the first contention.

(4) that the documentary evidence introduced by appellee reveals the employers' practice of "devising executives"; that Santiago Marcano was an executive on paper but he was actually an expert mechanic, a die man (*troquelero*) with some powers over other employees who are nothing more than his helpers; that he was what is known as a working foreman; that in cases like this one a strict construction must prevail. *Piñán, supra.* He indicates that there was oral evidence that Santiago was a mechanic, evidence which was not controverted by appellee.

The record shows that the situation is not the one set forth in the preceding paragraph, but that the trial court was justified in concluding the contrary. A witness testified that he went to appellee's old plant three or four times in a period of 15 days and on those occasions he saw Santiago Marcano performing mechanical work; then he visited appellee's new plant and there he saw said employee doing the same work. Since the witness was an investigator from the Department of Labor who went to appellee's old plant to carry out an investigation concerning another employee's complaint, the fact that on those few occasions he saw Santiago Marcano working on the machinery does not justify the conclusion that he was a mere mechanic. It should be noted that this witness investigated the nature of the position of a complainant who was precisely the former incumbent of the position then occupied by Santiago Marcano. However, he did not testify on the result of his investigation or on the conclusion reached as to the nature of the position.

Iluminado Rodríguez testified that he was a machine operator and mechanic helper of appellee; that he does not remember any other mechanic other than Santiago Marcano and Ángel Marcano; that they were lathemen-mechanics, electricians, and welders; the only one who worked on the repairs of machines was Santiago Marcano; that the witness worked from 7:00 a.m. to 12:00 noon, and from 1:00 to 4:00

p.m. daily but he had to stay until 7:00 p.m. repairing machines at the old plant together with the two Marcanos; that the breakage of machines was a common thing in the old plant and occurred rarely or on very few occasions in the new one; that sometimes, if the machinery broke early, he left at the regular hour, four in the afternoon; he did not remember how many times in a week or in a month he left after four but it might be that he worked 3 or 4 extra hours four times a week. On cross-examination he did not remember having been promoted to chief of one of the three production shifts in the old plant and refused to admit it. He did not remember the memo addressed to him to that effect, nor whether or not he belonged to the Union in the old plant nor whether the Union's fee was deducted from his wage there. He did not remember that Santiago Marcano, as Production Chief, addressed a memorandum to the witness as Chief of the first shift informing him that on a certain Saturday there was no work but he admitted having received others like that one; as to whether he signed memoranda as chief of shift he testified that some papers were brought down to him from appellee's office for his signature and he signed them, indicating that on the first shift of a Saturday there would be no work because of repairs. He does not remember whether he was paid for extra hours worked. It appears that he was thus paid, from a stipulation of the parties. Reluctantly he admitted having received a memorandum from appellee informing him about an increase in the salary due to the recommendation to that effect from Santiago Marcano. He admitted that extra hours could only be worked by authorization but insisted that such authorization was given by the general manager in spite of recognizing the initials of Santiago Marcano on his attendance card approving that the witness had worked extra hours. He admitted that when a machine was broken he saw people from outside "and looked around . . . they did

nothing . . . the one who worked was Mr. Marcano . . . . Personnel went there and looked at the machines . . . then Mr. Morán indicated what was to be done . . . ."

The manner this witness testified, his attitude at the witness stand, his accommodating memory, and his evasions justified the trial court in not giving credit to his testimony.

Anselmo Santiago testified, in synthesis, that he took care of the Union in Pepsi Cola; that most of the time he saw Santiago Marcano soldering or "tampering with tools"; that Ángel Marcano did the same; that both of them repaired the machines; that they worked in the shop and in the machines; that they did not belong to the Union because they were not included in the definition of contracting unit although it included mechanics; that in the production plant there was no immediate chief, the workers worked alone. He admitted that in the other departments there were supervisors. At the insistence of appellee's attorney and after many evasions he admitted having received a memorandum signed by Marcano as production chief. He also admitted that the collective bargaining agreement excluded foremen, supervisors, and chief of mechanics. He testified that he never saw Iluminado Rodríguez working as helper of the Marcanos but taking care of the filling machine, and once in a while of the boxes.

In the light of the testimony given by the preceding witness, we cannot conclude that the trial court erred in not giving credit to him.

The findings of the trial court on the managerial activity of Santiago Marcano find ample support in the extensive cross-examination of Marcano himself, in the testimony of appellee's President and General Manager, and in the substantial documentary evidence. It is evident that this appellant spent much less than 50% of his time working as mechanic since it was new machinery in which the repairs were occasional and unimportant. There was evidence that

it was estimated that Santiago Marcano spent from 5 to 10% of his time soldering and that he worked rarely at the lathe.

II. Since appellants submitted the claim for extra hours of Ángel Marcano on the same evidence, we have no ground to conclude that the trial court erred in concluding that this claim did not lie.

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on August 4, 1965, will be affirmed.